Exhibit E

ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

1345 AVENUE OF THE AMERICAS

NEW YORK, NEW YORK 10105-0143

(212) 603-6300

TELECOPIER: (212) 956-2164

October 20, 2003

WRITER'S DIRECT DIAL
NUMBER: 603-6302
E-MAIL: pts@robinsonbrog.com

**VIA FAX and FEDERAL EXPRESS**

Patrick Glenn, Claims Manager
United States Coast Guard NPFC
4200 Wilson Boulevard, Suite 1000
Arlington, Virginia 22203-1804

    Re:  Claim Number 903071-001
           Connecticut Tank Removal Inc., Claimant
           Mystic Bulk Carriers Inc., Respondent

Dear Mr. Glenn:

      This letter constitutes the further response of Mystic Bulk Carriers, Inc. ("Mystic") to the claim of Connecticut Tank Removal Inc. ("CTR") for compensation under the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq. (the "OPA").

      Initially, Mystic repeats its request, made in my October 1, 2003 letter to you, that we be provided with a copy of the claim as submitted by CTR. By copy of this letter to CTR's attorneys, we are also making that demand upon CTR. Without a copy of CTR's claim, Mystic is unable to respond to whether CTR has presented a claim that qualifies for compensation under the OPA. For instance, only removal costs that result from "the discharge of oil *into navigable waters or from a substantial threat of discharge into navigable waters*" are compensable. *Gatlin Oil, Inc. v. United States*, 169 F.3d 207, 210 (4th Cir. 1999) (emphasis added). *See also, Rice v. Harken Exploration Company*, 250 F. 3d 264 (5th Cir. 2001) (subsurface waters do not constitute navigable waters protected by the OPA).

      It is CTR's burden to show that the cleanup costs it claims to have incurred were in respect of a covered discharge. 33 C.F.R. 136.105(a) (claimant has the burden of providing all evidence needed to support its claim). Mystic is entitled to examine CTR's claim in order to contest whether CTR has met its burden of showing that the subject discharge was into, or

00203564.WPD;1

ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

Patrick Glenn, Claims Manager
October 20, 2003
Page 2

substantially threatened to be into, navigable waters. In addition, the costs allegedly incurred by CTR must be detailed in its claim and must be shown by CTR to have been reasonable. 33 C.F.R. 136.105(e)(4), (6), (7); *United States v. Murphy Exploration and Production Co.*, 939 F. Supp. 489 (E.D. La. 1996) (recovery denied for costs of monitoring oil spill by helicopter where costs thereof not shown to be reasonable). CTR is also responsible for submitting, as part of its claim, copies of all written communications with Mystic and with Mystic's insurance broker and liability insurance company. 33 C.F.R. 136.105(e)(10). As discussed in my earlier letter, and also herein, the existence of insurance and CTR's communication with Mystic's broker and insurance carrier are significant issues in this matter.

Until Mystic has been provided with a copy of CTR's claim and an opportunity to contest the claim, it is premature for Mystic to respond to the claim and it is premature for the NPFC to adjudicate the claim.

Without waiving Mystic's assertion that it is premature for Mystic to respond to the claim and for the NPFC to adjudicate the claim, Mystic also provides the following information.

At the time of the subject spill, Mystic believed that it had sufficient insurance coverage to pay for all clean-up costs and damages that might have resulted from the spill, regardless of whether the spill constituted a discharge into navigable waters. Enclosed are several documents that substantiate this Mystic's belief that it had adequate insurance coverage. These documents (which have a "Bates" number in the lower right-hand corner) are:

1) a Certificate of Liability Insurance from Mystic's insurance broker, C.S.I.R. Enterprises, Inc. that shows Mystic had a commercial general liability policy with Universal Underwriters Insurance Co. providing $2,000,000 in coverage, plus $4,000,000 in excess liability coverage through General Star (Bates no. IN00070);

2) a letter from C.S.I.R. stating that Mystic had Automobile Liability coverage through Universal Insurance Exchange in the amount of $1,000,000, and an umbrella policy with Lexington Insurance Company and with General Star (Bates no. IN00121);

3) a Certificate of Insurance from C.S.I.R. showing that Mystic had Automobile Liability coverage with Universal Insurance Exchange in the amount of $1,000,000 (Bates no. IN00790);

4) a Certificate from C.S.I.R. to the Federal Highway Administration certifying that Mystic had coverage with Universal Insurance Exchange in the amount of $1,000,000 (Bates no. IN00802);

00203564.WPD;1

ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

Patrick Glenn, Claims Manager
October 20, 2003
Page 3


5) a Certificate of Liability Insurance from C.S.I.R. showing that Mystic had general liability coverage with Universal Underwriters Insurance Co. in the amount of $2,000,000, auto liability coverage with the same underwriter in the amount of $1,000,000, and an excess umbrella policy with General Star in the amount of $4,000,000 (Bates no. 00805). These documents, and many others received by Mystic, gave Mystic every reason to believe that it had in place adequate insurance coverage to pay for reasonable clean-up costs in connection with any oil spill.

According to a letter from CTR's attorneys, Jacobi & Case (copy enclosed), when the November 24, 2001 spill occurred, CTR performed clean-up services at the scene at the request of Action Environmental Group, a company that coordinates environmental response efforts. CTR sent Mystic an invoice for the work in the amount of $296,865.53. Mystic forwarded this invoice to C.S.I.R. to arrange payment. CTR subsequently agreed to accept $275,000 in payment through Mystic's insurance broker, C.S.I.R. Considerable effort was made by Mystic's lawyers to get C.S.I.R. to arrange payment of CTR's claim.

CTR admits that it received a settlement check in the amount of $275,000 from Mystic's insurance broker. CTR claims it was unable to cash the settlement check because a stop payment order was put on the check by C.S.I.R.

In submitting CTR's invoice to its insurance broker C.S.I.R., and in pressuring its insurance broker to arrange payment for CTR, Mystic acted in full good faith. Mystic had nothing to do with C.S.I.R. stopping payment on the settlement check. Our subsequent investigation has shown that the insurance coverage on which Mystic was relying either was not placed by C.S.I.R., or was canceled by C.S.I.R., without the knowledge of Mystic and after Mystic had paid over $4.5 million in premiums for insurance.

Mystic is blameless in the failure of C.S.I.R. to pay CTR's invoice. Moreover, since C.S.I.R. issued a check to CTR in payment, CTR accepted C.S.I.R.'s check, and then C.S.I.R. stopped payment on the check, this is a purely commercial matter between CTR and C.S.I.R. Mystic, which has been severely damaged by paying over $4.5 million in insurance premiums and not receiving insurance, should not be further harmed because C.S.I.R. stopped payment on the check it issued to CTR. CTR's remedy is to pursue C.S.I.R. to make good on the check.

In summary, it is premature to adjudicate this claim. There are issues including whether the subject spill is a covered discharge under the OPA, whether the amount claimed by CTR is reasonable, and whether CTR's claim otherwise complies with the applicable regulations. These issues cannot be addressed until Mystic is provided a copy of CTR's claim. Without waiving the foregoing, Mystic believed in good faith it had adequate insurance coverage for the subject spill, and that CTR accepted a settlement check from Mystic's insurance broker C.S.I.R.,

00203564.WPD:1

ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

Patrick Glenn, Claims Manager
October 20, 2003
Page 4

which check was stopped through no fault or action of Mystic. Because CTR accepted a check from C.S.I.R., this is a matter between CTR and C.S.I.R., and Mystic should not be held responsible.

                              Very truly yours,

                              Philip T. Simpson

cc: Jacobi & Case, P.C. (attorneys for CTR) (by fax)
    Ronald B. Goodman, Esq.